UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Brenda J. Boruff, o/b/o Dillon Jay Boruff,

        Plaintiff,                             Case No. 08-14585

v.                                         Hon. Nancy G. Edmunds

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.
_____/

**ORDER REJECTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION [16]**

This matter comes before the Court on Magistrate Judge Donald A. Scheer's May 28, 2009 Report and Recommendation ("R&R") regarding cross motions for summary judgment by Plaintiff and Defendant, the Commissioner of Social Security ("Commissioner") and objections filed by Brenda J. Boruff, on behalf of her son, Dillon Boruff, a minor. The R&R recommends that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted because substantial evidence exists to affirm the administrative law judge's ("ALJ") determination that Plaintiff is not disabled. Being fully advised in the premises and having read the pleadings, the Court rejects the Magistrate Judge's Report and Recommendation and remands to the Commissioner of Social Security for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

On December 16, 2005, Brenda Boruff, on behalf of Plaintiff, filed an application for Supplemental Security Income (SSI), claiming that Plaintiff was disabled due to his

Attention Deficit Hyperactivity Disorder ("ADHD").  The application was denied, and a hearing was granted at which an ALJ considered the case *de novo*.  On January 23, 2008, the ALJ found that Plaintiff was not disabled and was not entitled to SSI.  The Appeals Council denied Plaintiff's request to review the ALJ's decision.  Therefore, the ALJ's decision became the final decision of the agency, and this court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**I. Facts**

Plaintiff was born on October 22, 1999, and was eight years old at the time of the ALJ's decision (Administrative Record ("AR") 49).  Plaintiff alleged that he was disabled as of February 15, 2004, because of ADHD (*Id.*).

On February 10, 2005, Plaintiff was examined by Ms. Vasher, a school psychologist (AR 166-169).  Vasher observed that Plaintiff moved a great deal in his chair during the examination, and that his activity level was much higher than other students his age (AR 166).  Vasher attempted to administer a Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R), but was unable to complete the test because of Plaintiff's inattention (AR 169).  Vasher determined that she would retest Plaintiff in the following school year because Plaintiff will have gained some maturity (*Id.*).

On March 14, 2005, Dr. Gavini, a pediatrician, examined Plaintiff and diagnosed him with ADHD (AR 156).  She prescribed Adderall XR 10 mg (*Id.*).

On April 25, 2005, a physician's assistant at Dr. Gavini's clinic saw Plaintiff for a follow up ADHD visit (AR 147).  The physician's assistant noted that Plaintiff's academic performance was not improving, but that Plaintiff's social performance was improving and his behavior with friends/siblings had improved (*Id.*).  The Plaintiff's Adderall dosage was

2

increased (*Id.*).

On May 17, 2005, Plaintiff became eligible for special education programs (AR 92). Plaintiff would spend half the day in general education classes and half the day in special education classes (*Id.*).

On October 6, 2005, Plaintiff again visited Gavini Pediatric Clinic for a follow up ADHD visit (AR 143). The physician's assistant noted that Plaintiff's medication was helping, and that there were no side effects (*Id.*). It was also noted that Plaintiff was excitable, impulsive, worried, and anxious (*Id.*). Both academic and social performance were improving, and Plaintiff's behavior with friends/siblings had improved (*Id.*).

On December 15, 2005, Dr. Gavini and her physician's assistant wrote a letter that stated that Plaintiff was diagnosed with ADHD on February 15, 2005, and that his symptoms have been controlled with medication, which at that time was Adderall XR 15 mg (AR 138).

On January 14, 2006, Ms. Telep, Plaintiff's kindergarten teacher completed a questionnaire (AR 184–91). Telep indicated that Plaintiff was repeating kindergarten and that his pre-reading, his pre-math, and his written language were all below grade level (AR 184). Telep indicated that Plaintiff had problems acquiring and using information, attending and completing tasks, and interacting and relating to others (AR 185–88). The report also suggests that Telep believed Plaintiff had problems caring for himself (AR 189). Telep did not believe that Plaintiff had any problems moving about and manipulating objects (*Id.*). Telep states that Plaintiff is taking medication for ADD, and that after taking his medication, Plaintiff is better able to focus, complete tasks, and comply with rules and routines (AR 190).

3

On March 3, 2006, consultative psychologist Dr. Mills examined Plaintiff (AR 195–197).  Dr. Mills observed that Plaintiff's overall concentration and focus were good during the testing (AR 196).  Plaintiff was able to count to ten, recite the alphabet, and identify colors, numbers, shapes, and letters (AR 196–7).  Plaintiff was unable to count by 3's or 7's, or to 100 by 5's or 10's (AR 196).  Dr. Mills gave Plaintiff a Global Assessment of Functioning (GAF) score of 50, and recommended mental health counseling (AR 197).

On June 14, 2006, Plaintiff was seen at the New Oakland Child Center ("The Center") (AR 207–13).  The social worker reported that Plaintiff was playful, compliant, friendly, and verbal (AR 211).   The social worker determined that Plaintiff's parents need parent effectiveness training, and that they lacked parenting skills (*Id.*).  The social worker reported that Plaintiff had threatened suicide (AR 207).  The social worker assigned Plaintiff a GAF score of 50 (AR 211).

On June 22, 2006, a psychiatrist examined Plaintiff (AR 215–17).  The psychiatrist reported that Plaintiff was cooperative (AR 216).  Plaintiff's speech was slightly unclear, goal-directed, and with normal rate and volume (*Id.*).  The primary diagnosis was ADHD, and the psychiatrist gave Plaintiff a GAF score of 50 (*Id.*).

On June 29, 2006, Dr. Pearlman, a clinician at The Center, noted that Plaintiff is more hyperactive when he is off of the medication, but that Plaintiff was in good spirits and that he denied having any eating or sleeping problems (AR 218).  Dr. Pearlman noted that there was no progress toward goals/objectives, and that Plaintiff was not compliant (*Id.*)

On September 29, 2006, Dr. Pearlman reported that Plaintiff was doing well (AR 223).  Plaintiff stated that he was doing well in school and denied having any eating or sleeping problems (*Id.*).  Plaintiff was compliant, and the medication was helping without causing any

4

side effects (*Id.*).

On October 13, 2006, Plaintiff's mother cancelled Plaintiff's appointment with Dr. Pearlman (AR 224).

On November 2, 2006, Plaintiff failed to show up to his appointment (AR 225).

On November 10, 2006, Dr. Pearlman reported that Plaintiff was doing "good" in school and that he denied having any eating or sleeping problems (AR 226). Dr. Pearlman reported that Plaintiff's progress toward goals/objectives was good, and that the medication was helping without causing any side effects (*Id.*).

On December 12, 2006, a social worker noted that Plaintiff had tried to set his house on fire (AR 228). Plaintiff was referred/recommended to attend a day treatment program (*Id.*).

On December 14, 2006, Plaintiff failed to show up to his appointment (AR 229).

On January 2, 2007, Plaintiff was discharged from treatment due to non-compliance (AR 230). Plaintiff did not make any progress because of non-compliance, and Plaintiff's parents were not cooperative with the treatment recommendations (*Id.*). It was noted that Plaintiff threatens suicide (*Id.*). Plaintiff's family environment was described as chaotic (AR 231). The social worker who wrote the report gave Plaintiff a GAF score of 50 (AR 230).

On March 19, 2007, Plaintiff was examined by Dr. Kahkashan, a psychiatrist at the Hegira Program (AR 241–47). Dr. Kahkashan noted that Plaintiff did not have any suicidal ideation or a history of prior self-harm (AR 243). Dr. Kahkashan's report noted that Plaintiff did not have any impairment of thought process/content, and that there was not any impact of Plaintiff's thought process on his functioning (AR 244). The report indicates that Plaintiff had impaired concentration, distractible attention, good memory, average intellectual

functioning, adequate judgment, and adequate impulse control (AR 245).   Dr. Kahkashan gave Plaintiff a GAF score of 56 (AR 246).

On July 9, 2007, Dr. Kahkashan signed a document indicating that Plaintiff was non-compliant with his medication (AR 253).  The document states that Plaintiff participated in less than 50% of scheduled treatment sessions, and that Plaintiff's mother participated in treatment sporadically (AR 252).

On September 28, 2007, Plaintiff was seen at The Center for a readmission evaluation (AR 235–39).  The psychiatrist noted that Plaintiff was non-compliant, and that Plaintiff's parents lack parenting skills and could use parent effectiveness training (AR 238).

On December 12, 2007, Plaintiff's second grade teacher, Ms. Young, completed a questionnaire for the state agency (AR 114-21).  Young reported that Plaintiff's reading, math, and written language levels were below grade level (AR 114).  Young indicated that Plaintiff has problems functioning in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for himself (*Id*). In the domain of acquiring and using information, Young reported that Plaintiff has a serious or very serious problem in every activity for which the questionnaire provides (AR 115).

## II. Analysis

### A. Standard of Review

The Social Security Act authorizes judicial review of any final decision of the Commissioner made after a hearing. 42 U.S.C. § 405(g).  The reviewing court has the power to affirm, modify, or remand the Commissioner's decision, with or without remanding the cause for a rehearing.  *Id.*  The reviewing court is limited to an examination of the record: it

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1983) (citing *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927 (6th Cir. 1983)).  The review is limited to determining whether the Commissioner's factual findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his conclusions.  *See id.*; *see also* 42 U.S.C. § 405(g).

"Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Brainard*, 889 F.2d at 681 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Because substantial evidence is less than a preponderance, there can be substantial evidence that supports opposite findings.  Thus, even if there is substantial evidence that supports an opposite finding, as long as there is substantial evidence that supports the ALJ's determination, the ALJ's determination must be affirmed.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The ALJ's  decision must be affirmed if supported by substantial evidence, even if the Court would have decided the matter differently.  *Id.* In determining whether the Commissioner's factual findings are supported by substantial evidence, the Court must examine the evidence in the record 'taken as a whole.' *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680 (6th Cir. 1992) (quoting *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).  The Court must, however, also "take into account whatever in the record fairly detracts from its weight."  *Id.* (internal citations and quotation marks omitted).

### B. Childhood Disability Standard

7

42 U.S.C. § 1382c(a)(3)(C)(i) provides that:

[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled:

1. A child will be found "not disabled" if he engages in substantial gainful activity. If the child is not engaging in substantial gainful activity, the analysis proceeds to the next step. 20 C.F.R. § 416.924(b).

2. A child will be found "not disabled" if he does not have a severe impairment or combination of impairments. If the child has a severe impairment or combination of impairments, the analysis proceeds to the next step. 20 C.F.R. § 416.924(c).

3. A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P. Appendix 1. If not, then the child is not disabled. 20 C.F.R. § 416.924, § 416.925, and § 416.926.

To determine if a child's impairment(s) functionally equal the listings, the ALJ must assess the child's functioning in terms of six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the child's impairment(s)

must result in "marked" limitations in at least two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation results if the child's impairment(s) "interferes seriously" with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is one that is "'more than moderate' but 'less than extreme.'" *Id.* It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.* An extreme limitation exists when a child's impairment(s) "interferes very seriously" with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "'Extreme' limitation also means a limitation that is 'more than marked.'" *Id.* Extreme limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean on standardized tests. 20 C.F.R. § 416.926a(e)(3).

### C. Plaintiff's Arguments

In his motion for summary judgment, Plaintiff argues that (1) the Appeals Council erred in failing to consider new and material evidence; (2) the ALJ erred in rejecting Plaintiff's mother's credibility; (3) the ALJ erred in finding less than marked impairments in the 'acquiring and using information' domain and the 'attending and completing tasks' domain; and (4) the ALJ erred in rejecting the opinions of treating and examining physicians.

Similar objections were made to the R&R. Plaintiff objects that (1) the Magistrate Judge did not make a determination as to whether evidence submitted to the Appeals Council was new, material, and there was good cause for not submitting the evidence to

9

the ALJ; (2) the Magistrate Judge did not address Plaintiff's argument that the ALJ erred in rejecting Plaintiff's mother's credibility; and (3) the Magistrate Judge wrongfully found that the ALJ did not err in finding that Plaintiff has less than marked impairments.[1]  This Court will make a *de novo* determination of those portions of the R&R to which these objections are made.[2]  28 U.S.C. § 636 (b)(1)(C).

### 1. New Evidence

In conjunction with his request for review of the ALJ's decision by the Appeals Council, Plaintiff presented evidence of an IQ test performed in April of 2008, several months after the ALJ's decision.  The result of the IQ test indicates that Plaintiff had a verbal IQ of 69 and a full scale IQ of 75.  The Appeal Council considered the new evidence, but ruled that it did not provide a basis for changing the ALJ's decision.

This IQ test was not before the ALJ when he rendered his decision, so the Court cannot consider it in its decision to uphold, modify, or reverse the ALJ's decision.  *Cotton v. Sullivan*, 2 F.3d 692, 695–96 (6th Cir. 1993).  The Court, however, "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

--------

[1] This argument includes Plaintiff's argument that the ALJ erred in rejecting the opinion of treating and examining physicians.

[2] All other objections to the R&R are waived.  *See Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) ("'[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review . . . .'")).

Evidence is new only if it did not exist or was unavailable to the claimant at the time of the administrative proceeding and might have changed the proceeding's outcome. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  The results of the IQ test were not released until after the ALJ issued his decision.  Therefore, the evidence is new.

Evidence is material if there is a reasonable probability that it would have produced a different administrative result.  *Hollon ex rel Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006).  The proposed evidence indicates that Plaintiff has a full scale IQ of 75. Generally, an IQ below 70 is required to qualify as disabled.  *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, *5 (6th Cir. Aug. 30, 2000) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05); *see also Kidd v. Comm'r of Soc. Sec.*, 7 F. App'x 483, 491 (6th Cir. 2001) ("Listing 12.05(c) [sic] requires an IQ between 60 and 70 and a severe impairment to merit a finding of disability.").  Listing 112.05D, however, states that the required level or severity for mental retardation is met when a "*valid verbal*, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."  20 C.F.R. pt. 404, subpt. P, app. 1 § 112.05D  (emphasis added).  Plaintiff had a verbal IQ of 69 and, as the ALJ found, the severe impairments of attention deficit hyperactivity disorder, learning disorder, and oppositional defiant disorder. There is a reasonable probability that the new evidence would have produced a different administrative result.  Thus, the new evidence is material.

Plaintiff has the burden to show that good cause exists for failing to incorporate new evidence into the record in a prior proceeding.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986)). Plaintiff can meet this burden of showing "'good cause' by demonstrating a reasonable

11

justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)).  "The Sixth Circuit takes a 'harder line' on the 'good cause' test." *Cotton*, 2 F.3d at 695.

Plaintiff's mother contends that Dillon attempted to take IQ tests in the past, but that the tests were not completed or inaccurate due to Plaintiff's age and difficulties with attention and concentration.  The only reference to an IQ test on the record is a March 2005 test that Vasher attempted to administer.  The test was incomplete due to Plaintiff's inattention.  Vasher stated that she would retest Plaintiff the following school year (AR 169), but there is no record that the follow-up test, nor that any other IQ test, was ever administered.  Plaintiff does not put forth any reason why an IQ test was not administered between March of 2005 and the hearing in front of the ALJ in January 2008, rather than in April of 2008.  Thus, Plaintiff does not meet his burden of showing that good cause exists for not presenting the IQ test in the hearing with the ALJ.  As such, the Court cannot order that the additional evidence be taken before the Commissioner.

### 2. Plaintiff's Mother's Credibility

The R&R does not address Plaintiff's argument that the ALJ erred in finding that Plaintiff's mother's testimony was not entirely credible.  It is the ALJ, however, and not the reviewing court that evaluates the credibility of witnesses, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007), and the ALJ's credibility determinations are to be accorded great weight and deference.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ's credibility determination must be consistent with the entire record and with the weight of the relevant evident.  *Rogers*, 486 F.3d at 248.  The ALJ

12

found that Plaintiff's mother's testimony was not entirely credible because she testified that Plaintiff had disciplinary problems every day at school and that Plaintiff takes his medication as prescribed.

It is unreasonable to discredit Plaintiff's mother's testimony merely because disciplinary problems did not occur literally "every day" at school. It is not unreasonable, however, to discredit Plaintiff's mother's testimony if the record as a whole indicates, as it does here, that disciplinary problems at school were relatively infrequent. While the Court is not insensitive to the idea that a frustrated mother may have a skewed perception as to the frequency of her child's disciplinary problems, this idea supports the finding of the ALJ that Plaintiff's mother's testimony was not entirely credible.

Plaintiff's mother testified that Plaintiff was taking the medication as prescribed. There are many references on the record, however, that suggest that Plaintiff was not taking his medication as prescribed. The record indicates that in addition to reports indicating that Plaintiff was not compliant with his medication, Plaintiff was discharged from treatment because of non-compliance and Plaintiff was not making any progress because of non-compliance. Reports also indicate that Plaintiff's mother was not cooperative with the treatment recommendations and only participated in treatment sporadically. In addition to cancelling appointments, Plaintiff failed to show up to some appointments and only participated in about 50% of the scheduled treatments. There is substantial evidence to support the ALJ's finding that Plaintiff's mother was not entirely credible, and therefore the ALJ's finding is entitled to deference. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592–93 (6th Cir. 1987) (per curiam) (deferring to the ALJ's credibility finding because there was substantial evidence to support it).

13

### 3. Less Than Marked Impairments

#### a. Acquiring and Using Information

This domain considers how well a child is able to acquire or learn information, and how well a child uses the information he has learned. 20 C.F.R. § 416.926a(g). Examples[3] of difficulties children can have in acquiring and using information include if the child (i) cannot rhyme words or the sounds in words, (ii) has difficulty solving mathematics questions or computing arithmetic answers, and (iii) talks only in short, simple sentences, and has a difficulty explaining what he means. 20 C.F.R. § 416.926a(g)(3). The ALJ refers to three evaluations in his determination that Plaintiff has a less than marked limitation in this domain. The first is school psychologist Vasher's evaluation that took place while Plaintiff was in kindergarten. The ALJ mentions that Vasher's report indicated that Plaintiff was most likely functioning between the average and low average range, but does not mention that a phonetic assessment was done while Plaintiff was in kindergarten where Plaintiff was unable to supply a rhyming word for any of the 8 words given to him. Next, the ALJ refers to the report of Plaintiff's kindergarten teacher, Ms. Telep. The ALJ notes that Telep reported that Plaintiff's reading, math, and written language were well below grade level, and that Plaintiff had a very serious problem expressing ideas in written form and had a difficult time recalling previously learned materials. Finally, the ALJ refers to the March 3, 2006 evaluation conducted by Dr. Mills at the request of Disability Determination Services. The ALJ notes that it was reported that Plaintiff's overall concentration and focus

---

[3] These examples do not necessarily describe marked or extreme limitation in the domain, but rather describe some, but not all, of the limitations that the ALJ may consider in this domain. 20 C.F.R. § 416.926a(g)(3).

14

were good during the testing session.

In determining that Plaintiff has less than marked limitations in the domain of acquiring and using information, the ALJ does not mention the questionnaire filled out by Plaintiff's 2nd grade teacher, Ms. Young.  The Social Security Administration provides that all the evidence received from the child's school, including questionnaires, will be considered.  20 C.F.R. § 416.924a(b)(7)(ii).   Young's report indicates that Plaintiff has problems functioning in the domain of acquiring and using information, and that Plaintiff has either a serious problem or a very serious problem in all of the specific activities listed.  The ALJ does not state why Ms. Young's report is not credited.  "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."  *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (internal citations omitted); *see also Lowery v. Comm'r, Soc. Sec. Admin.*, 55 F. App'x 333, 339 (6th Cir. 2003) (An "ALJ must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.") (internal citations omitted).

In the present case, the ALJ's assessment of Plaintiff's limitation in the 'acquiring and using information' domain "is not supported by substantial evidence because it ignores,[4] without any persuasive justification," the evidence in the record that supports the contention that Plaintiff has a marked or severe limitation in the 'acquiring and using

_____

[4] The Court does not assert that the ALJ actually ignored the evidence.  When the ALJ fails to mention rejected evidence, however, the Court is unable to determine if significant probative evidence was not credited or simply ignored.  *See Hopkins v. Comm'r of Soc. Sec.*, No.1:07-cv-964, 2009 WL 1360222, at *14 (S.D. Ohio, May 14, 2009).  The ALJ may not ignore evidence favorable to plaintiff, but rather he "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Id.* (internal citation omitted).

15

information' domain.  *See Swartz v. Barnhart*, 188 F.App'x 361, 371 (6th Cir. 2006).

Therefore, although the ALJ did not necessarily err in finding less than marked impairments

in the 'acquiring and using information' domain, the case is remanded in order to permit the

ALJ to decide whether a total assessment of the evidence alters his judgment.  *See id.*

(remanding a case to the Social Security Administration because the ALJ ignored evidence

on the record that supported a contrary finding).

### b. Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and

how well he is able to begin, carry through, and finish activities, including the pace at which

he performs activities and the ease of changing activities.  20 C.F.R. § 416.926a(h).

In determining that Plaintiff has less than marked limitation in attending and

completing tasks, the ALJ notes that it was reported that Plaintiff was better able to focus

and complete tasks when taking his medication and that Plaintiff is able to complete tasks

in class, sometimes without teacher intervention.  The ALJ also notes that Plaintiff has a

very serious problem carrying out multi-step instructions and that his homework is not done

and returned.

Although the ALJ does not mention Ms. Young's questionnaire, the omission does

not constitute reversible error in his determination that Plaintiff has less than marked

limitation in attending and completing tasks.  Although harmless error inquiry requires more

than a showing that Plaintiff had little chance of winning on the merits, *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004), reversible error occurs only if Plaintiff has

been prejudiced on the merits.  *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056

(6th Cir. 1983); *see also Broughton v. Astrue*, No. 07-257-HRW, 2008 WL 89941, *3 (E.D.

16

Ky. Jan 8, 2008) (finding that "the ALJ's omission is of no consequence" because the plaintiff "would still fall short of satisfying the requirements for disability.").   In the present case, Plaintiff was not prejudiced by the ALJ's failure to consider Ms. Young's report.  The Social Security regulations provide examples of limited functioning in the domain of attending and completing tasks.  *See* 20 C.F.R. § 416.926a(i)(3).  There is no evidence in the record that Plaintiff's behavior falls under any of the examples.   Although these examples are not determinative, their absence constitutes evidence that the ALJ may use in his evaluation.   Additionally, Young's report indicates that there were aspects of attending and completing tasks with which Plaintiff does not have a serious problem.  There is substantial evidence on the record as a whole that supports the ALJ's conclusion that Plaintiff has less than marked limitation in the domain of 'attending and completing tasks.' The Court finds that the ALJ's failure to discuss Young's report in regards to the 'attending and completing tasks' domain is harmless error.

### 4. Opinions of Treating and Examining Physicians

A treating physician's opinion is generally entitled to great weight in the evaluation process, but the ALJ may properly ignore statements of treating physicians that are conclusory and unsupported by the objective medical record. *Carreon v. Massanari*, 51 F. App'x 571, 574 (6th Cir. 2002) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990)).   Thus, ALJs are not bound by findings of physicians or psychologists, but they may not ignore these opinions and they must explain the weight given to the opinions in their decisions.  *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

In the present case, the ALJ determined that the treating psychiatrist's and Dr. Mills'

17

individual determinations that Plaintiff had a GAF score of 50 was not consistent with the medical evidence.  By making that determination, the ALJ is therefore not bound by the treating psychiatrist's and Dr. Mills' opinions that Plaintiff had a GAF score of 50.  The requirement that the ALJ give reasons for the amount of weight given to these opinions is satisfied.  The reasoning, however, is not supported by substantial evidence.  A GAF score is

> a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.  It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  A GAF score of . . . 41 to 50 means that the patient has serious symptoms . . . or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

*White v. Comm'r of Soc. Sec.*, No. 08-2292, 2009 WL 2003583, *2 (6th Cir. July 13, 2009) (internal citations omitted).

The ALJ reasons that Dr. Mills' evaluation contradicts his own finding of a GAF score of 50.  The only reasons the ALJ cites for this finding is that Dr. Mills found that Plaintiff presented with appropriate affect throughout the session and his overall concentration and focus was good, which the ALJ believes is contrary to a GAF score of 50.  The record has five instances where Plaintiff was assigned a GAF score.  These GAF scores were given independently by five different experts.  In addition to Dr. Mills' and the aforementioned psychiatrist's, Plaintiff was assigned a GAF score of 50 by two social workers, and a GAF score of 56 by another psychiatrist.  The ALJ's finding that a GAF score of 50 is not consistent with the record as a whole is not supported by substantial evidence.

## III. Conclusion

'If a court determines that substantial evidence does not support the

18

> Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.' Otherwise, the court should remand to the Commissioner for further consideration. Although the ALJ did not provide substantial evidence to support his conclusions, we cannot say that there is compelling evidence that White is entitled to benefits. We therefore must remand for further consideration.

*White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994)). In the present case, the factual issues have not been resolved and the record does not establish that Plaintiff is entitled to benefits. And although the ALJ did not provide substantial evidence to support his conclusions that Plaintiff has less than marked impairment in the 'acquiring and using information' domain or that a GAF score of 50 is inconsistent with the record taken as a whole, there is not compelling evidence that Plaintiff is entitled to benefits. Therefore, for the above mentioned reasons, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is REVERSED and REMANDED so that the Commissioner further considers whether there is substantial evidence in the record as a whole to support the findings that (1) Plaintiff has less than marked impairment in the 'acquiring and using information' domain, and that (2) a GAF score of 50 is inconsistent with the record taken as a whole.


                         s/Nancy G. Edmunds
                         Nancy G. Edmunds
                         United States District Judge

Dated: August 17, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2009, by electronic and/or ordinary mail.

                         s/Carol A. Hemeyer
                         Case Manager

20